UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SALVADOR A. RODRIGUEZ,

    Petitioner,

    v.

DERRAL ADAMS, Warden,

    Respondent.
_____/

No. C 04-2233 PJH

**ORDER DENYING PETITION FOR HABEAS CORPUS**

Salvador Rodriguez ("Rodriguez"), a state prisoner, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, which, on June 1, 2011, the court granted. However, on August 23, 2011, the court granted in part respondent's motion to alter the judgment and set an evidentiary hearing on the only remaining sub-claim upon which it had not already denied relief.

On February 17, 2012, the case came before the court for the evidentiary hearing granted in the August 23, 2011 order. Respondent appeared through its counsel, Peggy Ruffra and Moona Nandi, and Rodriguez appeared through his counsel, Linda Fullerton. Having considered the record, the relevant authority, and the testimony introduced at the evidentiary hearing, the court DENIES Rodriguez's petition for writ of habeas corpus.

**BACKGROUND**

This case has a lengthy history, which this court will not repeat here, but instead incorporates by reference its June 1, 2011 order granting habeas relief, and its August 23,

2011 order granting in part respondent's motion to alter judgment and setting an evidentiary hearing.

Briefly, prior to the February 17, 2012 evidentiary hearing, the court denied relief on all of Rodriguez's claims with the exception of one sub-claim alleging ineffective assistance of counsel based on his trial counsel, Pauline Weaver's failure to introduce witness Roy Ramsey's (aka "Tre") preliminary hearing testimony at trial. Regarding that sub-claim, Rodriguez argued that Weaver's failure to introduce Ramsey's testimony left the defense without any corroborating evidence in support of his defense that his use of deadly force was justified because he acted in defense of others. In its June 1, 2011 order, the court granted relief on the claim, holding that counsel's failure to introduce Ramsey's preliminary hearing testimony constituted deficient performance, and that it was prejudicial because there was a reasonable probability that the introduction of Ramsey's preliminary hearing testimony would have impacted the jury's verdict. However, in its August 23, 2011 order, the court reconsidered the sub-claim in light of its conclusion that Rodriguez had procedurally defaulted a related sub-claim for ineffective assistance of counsel as pertained to two other witnesses, Kenneth Jackson and Vonree Alberty. That order set an evidentiary hearing and noted in pertinent part as follows:

> Given the court's conclusions that the Supreme Court's decision in *Walker* mandates a finding that Rodriguez has procedurally defaulted his sub-claim regarding Jackson and Alberty, and that Rodriguez has not demonstrated sufficient cause and prejudice to excuse the default, the question becomes whether counsel's failure to present the Ramsey hearing testimony establishes deficient performance and if it does whether prejudice can be found based on that one deficiency standing alone.
>
> Notably, the procedural default and the fact that the state court denied the Jackson and Alberty sub-claim as untimely preclude this court from considering the exhibits attached to Rodriguez's September 17, 2007 supplemental traverse, detailed at pages 18-19 of the court's June 1, 2011 order and discussed throughout. Because the state court's July 15, 2009 denial cannot be considered a decision on the merits, that court cannot be said to have reviewed those exhibits on the merits, and consequently, they are no longer properly before this court. Although those exhibits pertained primarily to the Jackson and Alberty sub-claim, the Jackson and Alberty declarations, and specifically the additional details regarding the crime scene contained therein, strengthened Rodriguez's arguments in support of his claim of prejudice from flowing from his counsel's trial performance. In sum,

> those exhibits and the facts surrounding the Jackson and Alberty sub-claim substantially influenced the court's decision under § 2254(d)(1) regarding the reasonableness of the state court's decision with respect to the Ramsey sub-claim.
>
> In light of these developments, the court has re-evaluated its decision on the Ramsey sub-claim, and is hesitant to reconfirm its earlier grant of habeas relief based solely on this sub-claim in view of the current state of the record and particularly in the absence of admissible evidence of counsel's reasons for failing to introduce Ramsey's preliminary hearing testimony. The only "evidence" of her reasons is a hearsay statement included in state appellate counsel's declaration. Although the court did consider the statement it did not place much weight on the statement given its hearsay nature. However, upon reconsideration the court agrees with the state that it is inadmissible under Federal Rule of Evidence 801(c), and thus, the record is essentially devoid of any indication as to counsel's reasons for not presenting Ramsey's preliminary hearing testimony.
>
> The state has requested an evidentiary hearing in the event the court does not grant its motion to alter the judgment in its entirety. In its briefing order, the court queried the parties regarding whether it is permitted to conduct an evidentiary hearing in light of the Supreme Court's decision in *Pinholster*. As set forth above, the state contends that the court may conduct a hearing because the record is "silent" as to counsel's reasons regarding her failure to introduce the Ramsey preliminary hearing testimony. In support, the state cites to Justice Breyer's concurrence in *Pinholster*.
>
> Having reviewed the Supreme Court's decision in *Pinholster*, including Justice Breyer's concurring opinion, and numerous district court cases following *Pinholster*, the court concludes that *Pinholster*, though seemingly straight forward and unambiguous, actually raises more questions than it provides answers regarding a district court's ability to conduct evidentiary hearings and permit new evidence in federal habeas proceedings. *See, e.g., Lewis v. Ayers*, 2011 WL 2260784 at *6-8 (E.D. Cal. 2011); *Hearn v. Ryan*, 2011 WL 1526912 (D.Ariz. 2011). In his concurring opinion, Justice Breyer suggests a number of varying circumstances under which a hearing may still be appropriate in a federal habeas case, including a case such as this one, in which the district court may be inclined to grant habeas relief under § 2254(d)(1) based on inaccurate facts or untested facts whose truth cannot be presumed. *See Pinholster*, 131 S.Ct. at 1412; *Lewis*, 2011 WL 2260784 at *6-7. Here, the untested facts include Rodriguez's trial counsel's reasons, or lack thereof, for failing to introduce Ramsey's preliminary hearing testimony.
>
> Given that both parties have, at one time or another, requested an evidentiary hearing, and both would presumably prefer a hearing to be conducted before an unfavorable decision is rendered, the court GRANTS the state's request for an evidentiary hearing for the *sole* purpose of ascertaining Rodriguez's trial counsel's reasons for not seeking to introduce Ramsey's preliminary hearing testimony.

August 23, 2011 Order at 19-21.

3

**DISCUSSION**

**A.   Legal Standard**

A claim for ineffective assistance of counsel is cognizable as a claim of denial of the Sixth Amendment right to counsel, which guarantees not only assistance, but effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result. *Id.* In order to prevail on a Sixth Amendment ineffectiveness of counsel claim, petitioner must establish two things. First, he must establish that counsel's performance was deficient, i.e., that it fell below an "objective standard of reasonableness" under prevailing professional norms. *Id.* at 687-88. Second, he must establish that he was prejudiced by counsel's deficient performance, i.e., that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

**B.   Failure to Introduce Ramsey's Preliminary Hearing Testimony**

Rodriguez's trial counsel, Ms. Weaver, testified at the February 17, 2012 evidentiary hearing regarding her reasons for failing to introduce Ramsey's preliminary hearing testimony.

At the evidentiary hearing, Ms. Weaver testified convincingly that she made a strategic decision *not* to introduce Ramsey's preliminary hearing testimony for numerous reasons. Most significantly, she testified that her decision was based on the likelihood that the prosecution would undoubtedly have highlighted how Ramsey's preliminary hearing testimony was both internally inconsistent with two other statements Ramsey provided to authorities, and also that collectively, portions of Ramsey's statements and prior testimony conflicted in several important respects with Rodriguez's own testimony. Additionally, Ms. Weaver noted that Ramsey was a close friend of Rodriguez's, and that she believed the jury was likely to question his credibility for that reason. Ms. Weaver also relied on the fact

4

that other witnesses, including Thurston Breshell, whom Rodriguez was "protecting" at the time of the shooting, testified that the victim's group of friends was robbing Rodriguez's friends. Ms. Weaver further noted that she was also successful in introducing Ramsey's statement to Rodriguez that he had just been robbed as nonhearsay evidence to demonstrate the impact that the statement had on Rodriguez.

Regarding the potentially damaging external inconsistencies, Ms. Weaver specifically noted that Ramsey's statements contradicted Rodriguez's testimony regarding how Rodriguez obtained the gun from Ramsey, and the direction in which Rodriguez aimed the gun, both of which were important factors with respect to Rodriguez's defense. In one of his statements, Ramsey asserted that Rodriguez "snatched" the gun from him, which flatly contradicted Rodriguez's testimony that Ramsey pushed the gun into Rodriguez's hands. Ramsey's Police Interview, Respondent's Evidentiary Hrg. Exh. A-2 at 2. In another statement, Ramsey stated that Rodriguez "starting shooting towards the cats that were out there after us," suggesting that Rodriguez shot in the direction of the victim's group. Ramsey's Police Interview, Respondent's Evidentiary Hrg. Exh. A-2 at 6. In contrast, Rodriguez testified that he twice fired the gun into the air, after which two teenagers retreated, but two continued to hassle Rodriguez's friend, Breshell. Rodriguez told the remaining two to "get off" Breshell, and when they did not, Rodriguez testified that he fired the gun three more times at approximately a twenty-degree angle.

Ms. Weaver further testified that she discussed her decision not to introduce Ramsey's preliminary hearing testimony with a colleague of hers at the Alameda County Public Defender's office, and that her colleague agreed with her decision.

Recently, in *Harrington v. Richter*, the Supreme Court emphasized the application of *Strickland* to ineffective assistance of counsel claims and its relationship to § 2254(d)'s deferential standard of review. 131 S.Ct. 770 (2011). In *Harrington,* the petitioner was convicted of murder based largely on the testimony of a drug dealer witness with whom the petitioner and the victim had been smoking marijuana on the day at issue. *Id.* at 781–82.

5

The drug dealer testified that he and the victim were shot by the petitioner and a codefendant in the dealer's apartment. *Id.* In an attempt to deflect culpability to his codefendant, the petitioner sought to show that the victim was shot in the bedroom doorway. The prosecution, however, introduced expert testimony based on the victim's blood pattern that the victim was shot near the living room couch, a fact which inculpated the petitioner. *Id.* Although the petitioner's attorney called seven witnesses, the jury nevertheless found him guilty. *Id.* at 782.

The Ninth Circuit, *en banc*, granted habeas relief to the petitioner, holding that his trial counsel rendered ineffective assistance by failing to investigate and present expert testimony on forensic blood evidence that would have supported his self-defense claim and contradicted the prosecution's theory of how the crime occurred. *See Richter v. Hickman*, 578 F.3d 944, 968 (9th Cir. 2009). Specifically, the Ninth Circuit granted relief under § 2254(d)(1), concluding that the state court's decision constituted an unreasonable application of *Strickland*. *Id.* at 969.

The United States Supreme Court disagreed, and in reversing the Ninth Circuit, discussed § 2254(d)(1) in detail, noting that the Ninth Circuit "all but ignored 'the only question that matters under § 2254(d)(1).'" 131 S.Ct. at 786 (quoting *Lockyer v. Andrade*, 538 U.S. 63, 71 (2003)). The *Harrington* Court explained:

> The pivotal question [under § 2254(d)(1)] is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland's* standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a *Strickland* claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), "an unreasonable application of federal law is different from an incorrect application of federal law." A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself.

131 S.Ct. at 786.

The Supreme Court further stressed the deferential nature of the § 2254(d)(1) standard, holding that "a state court's determination that a claim lacks merit precludes

federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of that decision." *Id.* Moreover, the more general the rule being considered, "the more leeway courts have in reaching outcomes in case-by-case determinations." *Id.*; *see also Knowles v. Mirzayance*, 129 S.Ct. 1411, 1420 (2009).

The Supreme Court reasoned that the state court's presumptive determination that counsel's performance was not deficient when he failed to consult blood evidence experts in developing a defense strategy or to offer their testimony at trial, was not an unreasonable application of *Strickland*, where counsel could reasonably have decided to forgo inquiry into the blood evidence.[1] 131 S.Ct. at 789-790. The Court asserted that instead of supporting the petitioner's contention that his codefendant shot one victim in self-defense and that the second victim was killed in the crossfire and was later moved by the first shooting victim, such inquiry may have exposed the petitioner's version of events as an invention. *Id.*

It was at least arguable, the Court stated, "that a reasonable attorney could decide to forgo inquiry into the blood evidence in the circumstances here." *Id.* at 788. The Court noted that from the perspective of the defense counsel when he was preparing the defense, "there was any number of hypothetical experts . . . whose insight might possibly have been useful." *Id.* at 789.

The Court further concluded that "[c]ounsel was entitled to formulate a strategy that was reasonable at the time and to balance limited resources in accord with effective trial tactics and strategies," particularly since the experts' findings might have weakened the defendant's defense. *Id.* Even had it been apparent that expert blood testimony could support the defendant's defense, the Court concluded, "it would be reasonable to conclude that a competent attorney might elect not to use it." *Id.* It noted that the Ninth Circuit had concluded that, without jeopardizing the defense, an expert could have testified that the

---

[1] The state court had previously summarily denied the petition on the merits, so there was no reasoned decision.

7

blood in the dealer's doorway could not have come from the dealer and could have come from the victim, thus suggesting that the *Harrington* petitioner's version of the shooting was correct and the dealer/witness' version a fabrication. *Id.* However, the Supreme Court pointed out that this theory overlooked the fact that concentrating on the blood pool carried its own serious risks. *Id.* at 790. If serological analysis or other forensic evidence demonstrated that the blood came from the dealer alone, the *Harrington* petitioner's story would be exposed as an invention. *Id.* The Court reasoned that an attorney need not pursue an investigation that would be fruitless, much less one that might be harmful to the defense. *Id.* It noted that the petitioner's attorney had reason to question the truth of his client's account, given, for instance, the petitioner's initial denial of involvement and the subsequent production of a missing pistol. *Id.*

The Court held that it would have been altogether reasonable for the state court to conclude that this concern justified the course the petitioner's counsel pursued. *Id.* It further noted that even apart from this risk, there was the possibility that expert testimony could shift attention to esoteric matters of forensic science, distract the jury from whether the dealer was telling the truth, or transform the case into a battle of the experts. *Id.*

The Court stated that the Ninth Circuit "erred in dismissing strategic considerations like these as an inaccurate account of counsel's actual thinking." *Id.* Although courts may not indulge "post hoc rationalization" for counsel's decisionmaking that contradicts the available evidence of counsel's actions, neither may they insist counsel confirm every aspect of the strategic basis for his or her actions. *Id.* There is a "strong presumption" that counsel's attention to certain issues to the exclusion of others reflects trial tactics rather than "sheer neglect." *Id.*

Additionally, the Court held that the state court's presumptive determination, that counsel was not deficient because he had not expected the prosecution to offer expert testimony on blood evidence from the crime scene and therefore was unable to offer expert testimony in response, was not an unreasonable application of *Strickland*, where the

8

prosecution itself did not expect to present forensic testimony and had made no preparations for doing so on the eve of trial. *Id.* at 791.  In support, it noted that counsel represented the petitioner with vigor and conducted a skillful cross-examination of the prosecution's experts, eliciting concessions and drawing attention to weaknesses in their conclusions. *Id.*

The Court rejected the Ninth Circuit's finding that counsel had to be prepared for "any contingency," stating that "an attorney may not be faulted for a reasonable miscalculation or lack of foresight or for failing to prepare for what appear to be remote possibilities." *Id.*  Even if counsel should have foreseen that the prosecution would offer expert evidence, the Court concluded, the petitioner "would still need to show it was indisputable that *Strickland* required his attorney to act upon that knowledge." *Id.*

Here, like *Harrington*, on the record that has now been established, this court cannot conclude that the state court decision denying habeas relief on Rodriguez's sub-claim mandates relief under the Antiterrorism and Effective Death Penalty Act ("AEDPA").  The prior order granting habeas relief was based on the absence of any record as to why Ms. Weaver did not call what appeared to the court to be an important witness for her client and the court's assumption that such failure appeared to be due to her inattention and not due to a strategic decision.  The assumption was incorrect and, as a consequence, so was the court's prior ruling on this issue.  What was once an empty record, is now the record of a twenty-nine year veteran of a large and busy urban public defenders office, who has tried 80 felonies, including homicides and capital cases.  Her experience alone lends some credibility to her claim to have made a strategic decision with respect to Ramsey's testimony.  But more significantly, the court finds Ms. Weaver's testimony regarding her trial strategy to be both persuasive and credible; she did not fail to offer Ramsey's preliminary hearing testimony, rather she deliberately chose not to do so for sound and legitimate reasons.  Given the internal and external inconsistencies associated with Ramsey's statements and testimony, it was "reasonable to conclude that a competent

attorney might elect not to use" the testimony.  *See id.* at 789.  Indeed, at least one of Ms. Weaver's colleagues, another public defender, *agreed* with her decision at the time of the trial.  While Rodriguez's counsel disagreed with the soundness of Ms. Weaver's strategy, even she could no longer argue that the decision about Ramsey's testimony was not a strategic one.  Instead she was left to argue, as she would on a direct appeal of Rodriguez's conviction, that trial counsel's strategy was unreasonable.  But the test on habeas review is not whether another attorney may have tried the case differently.  Moreover, the court is persuaded that the trial strategy was reasonable given the totality of the evidence Ms. Weaver had to work with.  At best, Rodriguez has demonstrated that "fairminded jurists could disagree on the correctness" of Ms. Weaver's decision not to introduce Ramsey's testimony.  *See id.* at 786.  However, based on the deference afforded both Ms. Weaver's strategic decision and the state court's denial of the claim, the court finds that habeas relief is not warranted for this sub-claim and is therefore DENIED.

## CONCLUSION

This order incorporates by reference the orders entered on June 1, 2011 (docket no. 70) and on August 23, 2011 (docket no. 76).  However, the ruling on the Ramsey sub-claim contained in the June 1, 2011 order is hereby VACATED and superceded by the ruling on that sub-claim contained herein.  For the reasons stated in all three orders, Rodriguez's petition for a writ of habeas corpus is **DENIED**.  The prior judgment in Rodriguez's favor (docket no 71) was previously vacated and a new judgment will be filed concurrently herewith.  The clerk shall close the file.

## CERTIFICATE OF APPEALABILITY

To obtain a COA, Rodriguez must make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward.  "The petitioner must demonstrate that reasonable jurists would find the

district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Section 2253(c)(3) requires a court granting a COA to indicate which issues satisfy the COA standard. Here, the court finds that three issues meet the above standard and accordingly GRANTS the COA as to those issues. *See generally Miller-El v. Cockrell*, 537 U.S. at 322. Those issues are:

(1) whether Rodriguez's ineffective assistance of counsel sub-claim as it pertains to Kenneth Jackson and Vonree Alberty was procedurally barred;

(2) if not, whether trial counsel failed to adequately investigate and present testimony from Jackson and Alberty, witnesses who were never identified nor interviewed by the defense, and, therefore, were never subpoenaed to testify at trial; and

(3) whether trial counsel failed to adequately investigate and present testimony from Roy Ramsey, who was identified, interviewed, and testified at the preliminary hearing but who was *not* subpoenaed to testify at trial and whose preliminary hearing testimony trial counsel did not seek to introduce at trial.

Accordingly, the clerk shall forward the file, including a copy of this order, to the Court of Appeals. *See* Fed. R. App. P. 22(b); *United States v. Asrar*, 116 F.3d 1268, 1270 (9th Cir. 1997).

**IT IS SO ORDERED.**

Dated: February 24, 2012

_____
PHYLLIS J. HAMILTON
United States District Judge

11